UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., ) | |
|     *Plaintiff*, ) | |
| ) | |
|     *vs.* ) | 1:11-cv-01492-JMS-TAB |
| ) | |
| RUBEN GONZALES, individually and d/b/a EL ) | |
| SOL AZTECA MEXICAN RESTAURANT, ) | |
|     *Defendant.* ) | |

**ORDER**

Presently pending before the Court is Plaintiff J&J Sports Productions, Inc.'s ("J&J") Application for Default Judgment, [dkt. 27]. The Court held a damages hearing on September 4, 2013 and, for the reasons that follow, **GRANTS IN PART** J&J's Application.

**I.
BACKGROUND**[1]

J&J paid for and was granted the exclusive nationwide television distribution rights to "*Firepower: Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program*" (the "Program"), which was broadcast on November 14, 2009. [Dkt. 1 at 3, ¶ 9.] J&J then entered into sublicensing agreements with various commercial entities, which granted those entities certain rights to publicly exhibit the Program to patrons within their establishments. [*Id.* at 3, ¶ 10.] As a commercial distributor of the Program, J&J "expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers…." [*Id.* at 3, ¶ 11.]

---

[1] Defendant Ruben Gonzales, individually and doing business as El Sol Azteca Mexican Restaurant ("El Sol"), has not appeared in this action or otherwise participated, and the Clerk entered default against him on December 14, 2012, [dkt. 25]. Accordingly, the Court takes the facts alleged by J&J in its Complaint, [dkt. 1], and Affidavits, [dkts. 27-2; 27-3], as true, given Mr. Gonzales' default.

Defendant Ruben Gonzales is the owner of El Sol, a restaurant located in Indianapolis, Indiana. [*Id.* at 1.] With knowledge that he was not authorized to do so, Mr. Gonzales exhibited the Program at El Sol on November 14, 2009. [*Id.* at 3-4, ¶ 12; 27-3 at 2.] A private investigator hired by J&J went to El Sol on the evening of November 14, 2009 and was not charged a cover charge, but observed that the Program was being broadcast to approximately one hundred to one hundred and fifty patrons. [Dkt. 27-3 at 2.] The private investigator observed five televisions in El Sol, and "an HBO pay per view boxing match" being shown on at least some of the televisions. [*Id.*] He "was unable to identify the boxers or determine the round in which they were engaged," due to the large crowd which restricted his movements. [*Id.*] J&J alleges that the HBO fight being broadcast at El Sol the evening of November 14, 2009 was the Program, and the Court accepts that fact as true since Mr. Gonzales has not participated in this litigation to dispute that allegation.

J&J filed the instant lawsuit on November 10, 2011, alleging that Mr. Gonzales violated 47 U.S.C. § 605 and 47 U.S.C. § 553, and asserting a claim for conversion. [Dkt. 1.] J&J obtained a Clerk's Entry of Default on December 14, 2012, [dkt. 25], and has now moved for default judgment in the amount of $110,000 as statutory and enhanced damages under 47 U.S.C. § 605(e)(3)(B)(iii) and (c)(ii), and $4,200 for the tort of conversion, [*see* dkt. 27-4].

The Court held a damages hearing on September 4, 2013, which Mr. Gonzales did not attend.

## II.
### STANDARD

Once the Clerk has entered default, a plaintiff may seek default judgment under Fed. R. Civ. P. 55(b)(2) and "the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not," *Wehrs v. Wells*,

- 2 -

688 F.3d 886, 892 (7th Cir. 2012).  Accordingly, "[d]amages must be proved unless they are liquidated or capable of calculation."  *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990).  Therefore, the Court must conduct an inquiry in order to determine the amount of damages with "reasonable certainty."  *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).

### III.
#### DISCUSSION

**A.     47 U.S.C. §§ 553 and 605**

J&J has alleged claims under both 47 U.S.C. § 553 and 47 U.S.C. § 605.  [Dkt. 1 at 3-5.] Section 553 applies to the "unauthorized reception of cable service," while § 605 applies to the "unauthorized publication or use of communications."  47 U.S.C. § 553 and 605.  J&J cannot recover under both sections, because "they target two distinct types of piracy."  *J&J Sports Prods. v. McCausland*, 2012 U.S. Dist. LEXIS 4439, *6 (S.D. Ind. 2012); *see also United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996).  J&J has chosen to proceed under § 605 and because Mr. Gonzales has not participated in this litigation, thus depriving J&J of any discovery to determine which section more appropriately applies here, the Court will accept J&J's choice.  *See J&J Sports Prods. v. Aguilera*, 2010 U.S. Dist. LEXIS 57717, * 5 (N.D. Ill. 2010) ("although the precise means of transmission has not been determined, under the circumstances of this case, where Plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of Defendants' failure to appear or defend in this action, Plaintiff should not suffer the resulting prejudice").

Under § 605(a), a plaintiff may elect to receive either actual damages or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I) or (II).  J&J has elected to seek statutory damages here, which range from $1,000 to $10,000 for each violation.  J&J also seeks enhanced statutory damages of $100,000 under 47 U.S.C. § 605(e)(3)(C)(ii), which provides that "[i]n any case in which the

court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)." Finally, 47 U.S.C. § 605(e)(3)(B)(iii) allows the award of reasonable attorneys' fees, but J&J has not made such a request to date.

When the number of patrons watching the illegal broadcast is known, courts often use that number as a basis for determining the amount of statutory damages. *Aguilera*, 2010 U.S. Dist. LEXIS 57717 at *7. J&J has established that approximately 100 to 150 patrons were present at El Sol on November 14, 2009 when the Program was broadcast there. [Dkt. 27-3 at 2.] Given the large number of patrons in attendance at El Sol, and also the fact that the Program was broadcast on at least some of five televisions, the Court accepts J&J's request for the maximum amount of statutory damages of $10,000. This award is in line with awards of $10,000 by other courts. *See, e.g., McCausland*, 2012 U.S. Dist. LEXIS 4439 at *8 (12-17 patrons watching one television); *J&J Sports Prods. v. Aguilar*, 2013 U.S. Dist. LEXIS 104675, *6 (S.D. Ind. 2013) (150-200 patrons watching six televisions); *J&J Sports Prods. v. Ceballos*, 2013 U.S. Dist. LEXIS 105176, *17 (E.D. Cal. 2013) (47 patrons watching two televisions). In awarding the $10,000 statutory maximum, the Court also notes that Mr. Gonzales has failed to respond to the Application, so has not provided the Court with any guidance regarding what amount of damages to award.

As for enhanced damages, courts have considered several factors including: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event." *Aguilera*, 2010 U.S. Dist. LEXIS 57717 at *8. Courts

also consider "the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.*

J&J has not presented any evidence indicating that Mr. Gonzales is a repeat offender, and the Court also notes that the investigator hired by J&J was not charged a cover charge when he entered El Sol, nor did he observe any posters or fliers inside or outside El Sol advertising the Program. [Dkt. 27-3 at 2.] However, the Court finds Mr. Gonzales' failure to appear and defend himself in this matter telling, and also finds it important to send a deterrent signal to Mr. Gonzales and other offenders that the conduct at issue here will not go without consequence. *See McCausland*, 2012 U.S. Dist. LEXIS 4439 at *11 ("[T]he Court also believes that the need to send a deterrent signal to Defendants and other would-be offenders is paramount. Moreover, the Court accords weight to the fact that Defendants have opted not to respond to Plaintiff's allegations in any fashion whatsoever. Not only does this failure to respond evince willfulness, it also precludes the Court from analyzing how a given damages award might impair the commercial viability of Defendants' business"); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D. N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Indeed, J&J's counsel made a compelling argument at the damages hearing regarding deterrence, and the fact that when a program is illegally pirated, potential customers in the same geographic area generally will not legally purchase that program because they are aware their competitors do not pay the royalty fee.

Having considered these factors, the Court finds that J&J is entitled to an enhanced statutory damages award of $10,000 due to the broadcast's large audience, the fact that the Program was broadcast on multiple televisions, and the fact that Mr. Gonzales has not participated in this

litigation so has not presented any mitigating factors.  *See McCausland*, 2012 U.S. Dist. LEXIS 4439 at *11 (awarding $30,000 in enhanced damages where broadcast was to 12 to 17 patrons on one television, even where there was no evidence defendant charged a cover or advertised, or that he was a repeat offender).  *But see Aguilar*, 2013 U.S. Dist. LEXIS 104675 at *6 (denying enhanced statutory damages where defendant broadcast fight to 150 to 200 patrons on four televisions because "there is no evidence that exhibition of the fight was publicized in order to attract patrons, nor is there evidence regarding whether the bar normally charges cover.  There is also no suggestion that [defendant] is a repeat offender"); *J&J Sports Prods. v. Turrubiartes*, 2013 U.S. Dist. LEXIS 104674, *6 (S.D. Ind. 2013) (denying request for enhanced damages where fight was shown to 25 to 30 patrons on one television with no cover charge, no evidence defendant publicized the event, and no evidence defendant was a repeat offender).  The Court finds that the $10,000 enhanced damages award will send a necessary deterrent signal to Mr. Gonzales, and to other potential offenders as well.

      **B.**    **Conversion**

J&J seeks $4,200 in connection with its conversion claim, which the Court assumes is the cost of a license to broadcast the Program had Mr. Gonzales purchased such a license.  A plaintiff cannot recover damages for a state law claim for conversion while also recovering damages under 47 U.S.C. § 553 or 605.  *See Aguilar*, 2013 U.S. Dist. LEXIS 104675 at *7 (denying request for judgment on conversion claim because "any additional damages may constitute double recovery"); *McCausland*, 2012 U.S. Dist. LEXIS 4439 at *12; *DirecTV, Inc. v. Beecher*, 296 F.Supp.2d 937, 944 (S.D. Ind. 2003) ("DirecTV's claims for theft and conversion of satellite broadcasts are preempted").  Accordingly, J&J's request for judgment on its conversion claim is denied.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** J&J's Application for Default Judgment, [dkt. 27], to the extent that it will **ENTER DEFAULT JUDGMENT** for J&J and against Mr. Gonzales in the amount of $20,000. Should J&J intend to seek its fees and costs associated with this matter, it must file a petition within **14 days** of this Order. Mr. Gonzales shall have **7 days** to respond to any such petition. Final judgment will enter after the fees and costs issue has been resolved.

09/05/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas P. Riley
LAW OFFICES OF THOMAS P. RILEY
tprlaw@att.net

**Copy by U.S. Mail to:**

Ruben Gonzales
5354 West 38th Street
Indianapolis, IN 46254